# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

IN RE:

TRAVIS SETH KNIEP and　　　　　　　　CASE NO. 24-10253-CGB
KIMBERLY JOY KNIEP,　　　　　　　　　CHAPTER 7

DEBTORS

---

MINNS FIRM CLIENTS,
PLAINTIFFS,

　　　　　　　　　　　　　　　　　　　ADV. PRO. NO.
vs.　　　　　　　　　　　　　　　　　　_____

TRAVIS SETH KNIEP,
DEBTOR/RESPONDENT

---

## MINNS FIRM CLIENTS'
## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

TO THE HONORABLE SHAD M. ROBINSON, UNITED STATES BANKRUPTCY JUDGE:

COME NOW Plaintiffs, the Minns Firm Clients, pursuant to Federal Rules of Bankruptcy Procedure 7001(6) and 11 U.S.C. §523(a), to object to the discharge of the debts of Travis Seth Kniep ("Seth Kniep," "Debtor Kniep," or "Respondent") owed to the Plaintiffs, and allege as follows:

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§157(a), (b)(1) and (2); and 1334(a), because this adversary proceeding arises from the bankruptcy case of *In re Travis Seth Kniep and Kimberly Joy Kniep*, Case No. 24-10253-CGB.

2. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and (J).

3. Venue in this adversary proceeding is proper in this Court under 28 U.S.C. §§1408 and 1409 because the Debtors' bankruptcy case is pending in this Court.

4. Relief is sought pursuant to Section 523(a) of the United States Bankruptcy Code and Federal Rules of Bankruptcy Procedure 4007.

## II. PARTIES

5. Plaintiffs are a group of individuals who invested in Travis Seth Kniep's company, Just One Dime, LLC ("JOD") and its various subsidiaries. They are creditors in the related bankruptcy of Just One Dime Coaching, LLC ("JODC").

6. Respondent Travis Seth Kniep is one of the individual Debtors in above-captioned Chapter 7 bankruptcy case filed in this Court on March 8, 2024

(the "Kniep Bankruptcy"). He may be served through his counsel of record in the Kniep Bankruptcy: Michael Baumer, The Law Office of Michael Baumer, PO Box 1818, Liberty Hill, Texas, 78642.

7. Just One Dime Coaching is a corporation which filed for Chapter 7 relief in this Court on November 23, 2023, under Case No. 22-10783. JOD and JODC are alter egos of Respondent Seth Kniep, and accordingly, allegations made against JOD/JODC are made against Debtor Kniep.

### III. INCORPORATION BY REFERENCE

8. The Minns Firm Clients incorporate by reference the jurisdiction, arguments, and counts in the MLO Brands, LLC's aptly-written *Complaint to Determine Dischargeability of Debt*, Doc. 50 in the case of *In re Travis Seth Kniep and Kimberly Joy Kniep*, Case No. 24-10253-CGB.

9. The Minns Firm Clients also incorporate by reference as if repeated fully herein their *Omnibus Opposition to the Motion of Travis Seth Kniep and Kimberly Kniep to Sever Adversary Proceeding*, Doc. 97 in the JOD Adversary Action *Minns Firm Clients vs. Danilo Varriale, et al.*, Case No. 23-01036-SMR, which is equally applicable to the challenge against Debtor Kniep's requested dischargeability. A courtesy copy is attached as Exhibit 1a.

## IV. FACTS

10. Plaintiffs incorporate the preceding paragraphs as if repeated fully herein.

11. Seth Kniep was founder and leader of a company called Just One Dime, LLC. There were numerous entities under the JOD umbrella, including Just One Dime Coaching ("JODC"). In 2018, Mr. Kniep started a JOD program called Done For You under JODC. The program purported to provide the investor with "turnkey" service in building and running a store on the Amazon website. During the life of the program, there were over 900 investors, including the Minns Firm Clients.

12. Seth Kniep was the face of JOD. He actively recruited investors online, promising them fast, substantial profits.

13. Each JOD investor entered into a Service Agreement with the company, under which the company promised to perform specific services on behalf of the investor in exchange for the initial investment of at least $30,000. Seth Kniep signed each of the Service Agreements on behalf of JOD or one its subsidiaries. Seth Kniep's financial documents, which Plaintiffs obtained through discovery, shows he took substantial payouts from the company.

14. Seth Kniep and JODC secretly contracted with (as opposed to hiring as employees) four individuals known as "Brand Builders" to work directly with investors to perform the services listed in the Service Agreements. In exchange, the Brand Builders received 67% of the investors' initial investments.

15. In reality, Respondent and his business associates did not intend to perform the services listed in the Service Agreements. Nevertheless, Debtor Kniep continued to personally assure investors that the promised tasks would be completed. When months and even years passed without performance by JOD, investors asked for refunds of their initial investments. Respondent refused them.

16. In the end, all of the Minns Firm Clients lost their entire initial investments and more in the Done For You scheme.

17. Seth's son, Josiah Kniep ("Josiah") identified himself at various points in JOD's lifespan as the company's co-founder, CEO, Chief Technical Officer, vice-president of video production, and Chief Experience Officer for JOD.

18. However, JOD's 1120-S tax returns for tax years 2018 and 2019 show that Debtor Kniep owned 100% of the company.

19. According to Excel spreadsheets from the JOD production, JOD's revenues began to crash in March 2021. See *Affidavit of John Lorio*, Exhibit 1, 1bb.

20. Despite the decline in revenues, in 2021 Debtor Kniep paid himself both the <u>highest</u> salary ($261,000) and distributions ($3,034,000) of any other year at JOD. See Lorio Affidavit, Ex. 1y, JOD K-1 for Debtor Kniep for 2021.

21. And, as noted in JOD Adversary Action's ECF 97 opposition to severing the Kniep's personal bankruptcy, Columbia Consulting Group, PLLC was hired to investigate "the extent that the Knieps [may] have diverted assets from [JOD], [as] such claims generally belong to the estate…" [Plaintiffs' Omnibus Motion quoting Bankruptcy Trustee's ECF 144, pg. 4 in the JOD Adversary Action]. In fact, the tangled financial operations of Debtor Kniep and JOD were so bad that keeping track of them it appears to be the most common time entry of Columbia Consulting Group, LLC, taking 254.7 hours at a cost of $66,680 in hourly time *alone*.

22. On October 28, 2022, Seth Kniep abruptly ended the Done for You program. Investors were told there would be no refunds. On information and belief, Seth Kniep continued to recruit new investors and to take payouts from the company even after he knew he was close to shutting it down.

23. During the period of 10/14/22 to 11/14/22, the undersigned law firm filed four lawsuits prior to the JOD Bankruptcy being filed. The Oakes case, which was the first to receive a TRO, initially only had claims for breach of contract,

unjust enrichment, violation of the Texas Deceptive Trade Practices Act, and securities fraud. Federal Judge Yeakel granted all of the Temporary Restraining Orders that were filed, which were followed by injunctions that continue through to the present time. See Lorio Affidavit 1, 1b-1s. In total, there were 8 such orders.

24. In order to meet the standard for a Temporary Restraining Order, a party has to meet a very high standard – that there is a "substantial likelihood" that the party "will prevail on the merits." And, the claims against Debtor Kniep at that point were his abuse of his position at JOD, which explicitly requires piercing the corporate veil/alter ego.

25. On November 23, 2022, Just One Dime Coaching, LLC filed for Chapter 7 bankruptcy protection in this Court: *In re Just One Dime Coaching, LLC, et al.*, Case No. 22-10783-TMD (the "JODC Bankruptcy"). The Minns Firm Clients are all creditors in that bankruptcy. Plaintiffs subsequently filed an adversary case in the JOD Bankruptcy against JOD, several of its affiliate companies, Seth Kniep, several Kniep family members, and the four JOD Brand Builders: *Minns Firm Clients v. Danilo Varriale, et al.*, AD. PRO. NO. 23-01036-SMR (The "JOD Adversary Action"). The JODC Bankruptcy and JOD Adversary Action are still pending in this Court. The claims in that case include violations of state and federal securities

law, breach of contract, and violations of the Texas Deceptive Trade Practices-Consumer Protection Act.

26. On March 8, 2024, Seth Kniep and his wife Kimberly Kniep filed for personal bankruptcy protection under Chapter 7 in the above-captioned case. In their bankruptcy petition, the Knieps claim their current net worth is only $50,000. Plaintiffs contend that through fraud and breach of contract, Seth Kniep has obtained considerably more than that in ill-gotten JOD funds, and that his finances are so intermingled with JODC's finances that it would be improper for him to receive discharge of the debts owed to Plaintiffs in his personal bankruptcy.

## V. LAW AND ANALYSIS

*A. Law*

*Piercing the Corporate Veil*

27. Plaintiffs incorporate the preceding paragraphs as if repeated fully herein.

28. Section 101.114 of the Texas Business Organizations Code states, "[e]xcept as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a

judgment, decree, or order of a court." Accordingly, a corporate agent (or LLC member) may only be held liable for the corporation's breach of contract or fraud under traditional veil piercing laws. Texas courts have applied the statutory veil-piercing laws which are applicable to corporations also to limited liability companies. *See McCarthy v. Wani Venture*, 251 S.W.3d 573, 590-91 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

29. Under Texas law, the corporate veil may be pierced where "(1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud." *Rimade Ltd. v. Hubbard Enters.*, 388 F.3d 138, 143 (5th Cir. 2004).

30. Section 21.223 the Texas Business Organizations Code provides an additional requirement when a litigant seeks to pierce the corporate veil for breach of contract: Section 21.223(b) provides that in a breach of contract case, "the veil may be pierced where the defendant shareholder 'caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder.'" *Id.* (quoting Tex. Bus. Corp. Act art. 2.21(A)(2), now codified at Tex. Bus. Org. Code § 21.223). Thus, in a breach of contract case, the veil may be pierced under the traditional theories listed above, but "these doctrines must be supported by facts showing 'actual

fraud.'" *JNS Aviation, Inc. v. Nick Corp.*, 418 B.R. 898, 907 (N.D. Tex. 2009) (quoting *Farr v. Sun Word Savings Association*, 810 S.W.2d 294, 296 (Tex. App.—El Paso 1991, no writ)).

31. The above-discussed sections of the Texas Business Organizations Code support the conclusion that, in cases of misrepresentation or fraud (as opposed to simple breach of contract), a corporate agent may be held personally liable for his own misrepresentations. *See Kwasneski v. Williams (In re Williams)*, Nos. 09-52514, 10-05077, 2011 Bankr. LEXIS 266 *3 (Bankr. W.D. Tex. 2011). ("[A] corporate officer may not escape liability where he had direct, personal participation in wrongdoing, as to be the 'guiding spirit behind the wrongful conduct' or the 'central figure in the challenged corporate activity.' *quoting Ennis v. Loiseau,* 164 S.W.3d 698, 707-708 (Tex. App.—Austin 2005)).

32. Although "actual fraud" is not statutorily defined, courts have construed the term, for purposes of piercing the corporate veil, as "involv[ing] dishonesty of purpose or intent to deceive." *Tyco Enters., Inc. v. Robinson,* 390 S.W.3d 497, 508 (Tex. App.—Houson [1st Dist.] 2012, pet. dism'd). In the context of piercing the corporate veil, actual fraud is not the same as the tort of fraud; actual fraud involves dishonesty of purpose or intent to deceive. *Latham v. Burgher*, 320 S.W.3d 602 (Tex. App. 2010).

*Alter Ego*

33. The alter ego doctrine is one theory used to pierce the corporate veil. *Bale v. Ryan (In re Ryan)*, 443 B.R. 395, 406 (Bankr. N.D. Tex. 2010). It is applied when there is "such a unity between corporation and individual. . .that the separateness of the corporation has ceased and holding only the corporation liable would result in an injustice." *White v. Cyr (In re Cyr)*, 838 F. App'x 54, (5th Cir. 2020) *quoting Gibraltar Sav. V. LDBrinkman Corp.,* 860 F.2d 1275, 1288 (5th Cir. 1988).

34. Plaintiffs contend that Respondent Seth Kniep and JOD were, at all times relevant to these claims, each other's alter ego and are therefore each liable for the debts, obligations, representations, and omissions of the other.

*11 U.S.C. §523*

35. Section 523(a) of the Bankruptcy Code excepts from discharge certain types of debts. Plaintiffs argue that Seth Kniep's debts to them are nondischargeable under this section.

**B. Claims**

### COUNT 1: 11 U.S.C. §523(a)(2)(A)

36. Plaintiffs incorporate the preceding paragraphs as if repeated fully herein.

37. Plaintiffs argue that Respondent Seth Kniep is indebted to them for money, property, or services he obtained under false pretenses, and should be denied discharge of such indebtedness in accordance with Section 523(a)(2)(A) of the Bankruptcy Code.

38. In Texas, a promise of future performance is fraudulent if the promise is made with no intention of performing at the time the promise is made. *See Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 292 (5th Cir. 2023); *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

39. Now, in hindsight, it is evident from Seth Kniep's actions during the life span of the JOD Done For You program, that it was always intended to be a pyramid scheme that only benefited him and the company's "Brand Builders," and not the investors. First, there is no evidence that Respondent or any of the Brand Builders invested their own money in the program.

40. Second, in a contract with JODC, the Brand Builders agreed to falsely present themselves to investors as JOD employees rather than independent contractors. Seth Kniep, through JODC, also contractually agreed to indemnify the Brand Builders for their JOD work <u>after</u> they were personally threatened with litigation.

41. Third, from the beginning, Seth Kniep and JOD gave investors constant excuses as to why the services they had promised investors were not forthcoming. When investors requested refunds of their initial investments, Seth Kniep refused, telling them the funds had already been spent on items such as company overhead (rather than on the services for which investors had contracted).

42. Meanwhile, Seth Kniep was taking hefty payouts from JOD, and openly bragged about how he had invested those funds in real estate. The Brand Builders, who were supposed to be using investors' funds to perform services for them, failed to perform those services. And the Brand Builders began buying pricey real estate after contracting with JOD.

43. Fourth, when disgruntled JOD investors began complaining to each other on Facebook and other social media platforms, Seth Kniep attempted to shut down those communications. Respondent also attempted to induce dissatisfied investors to switch from the Done For You program to online arbitrage agreements that offered less protection for them. Included in the JOD online arbitrage agreement was a waiver of the investor's right to participate in a class action lawsuit or arbitration.

44. By the time of the creditors' meeting in the JODC Bankruptcy on December 30, 2022, Respondent admitted he did not know if even five of the JOD investors (out of more than 900) had made any money from their investments.

## COUNT 2: 11 U.S.C. §523(a)(4)

45. Plaintiffs incorporate the preceding paragraphs as if repeated fully herein.

46. The debts owed the Minns Firm Clients were incurred through Seth Kniep's fraud or defalcation "while acting in a fiduciary capacity, embezzlement, or larceny" as contemplated by Section 523(a)(4) of the Bankruptcy Code. Defalcation while acting in a fiduciary capacity for purposes of this section does not require fraud or embezzlement, but only willful neglect of duty. *Shcolnik v. Rapid Settlements Ltd. (In re Shcolnik)*, 670 F.3d 624, 628 (5th Cir. 2012).

47. As the founder and owner of JOD, Seth Kniep most certainly had a fiduciary duty to ensure that the company remained financially stable and that it provided the goods and services for which the investors contracted. Plaintiffs contend Respondent willfully neglected those duties. Instead, he recruited JOD investors by intentionally misrepresenting to them what the company would provide. Respondent knew JOD would not be providing the promised services,

and that he and the Brand Builders would be keeping the investors' funds for themselves.

48. Since Seth Kniep's debts arose from acts of fraud or defalcation, he is not entitled to discharge of those debts.

### COUNT 3: 11 U.S.C. §523(a)(6)

49. Plaintiffs incorporate the preceding paragraphs as if repeated fully herein.

50. Plaintiffs contend that Respondent's conduct constitutes "willful and malicious injury" of Plaintiffs or their property, and therefore, Seth Kniep should be denied discharge for the indebtedness arising from this behavior under Section 523(a)(6). The Fifth Circuit has held that an injury is "willful and malicious" where there is either an objective substantial certainty of harm or a subjective motive to cause harm. *Guerra & Moore Ltd., LLP v. Cantu (In re Cantu)*, 389 F. App'x 342, 345 (5th Cir. 2010).

51. Plaintiffs argue that, considering that Seth Kniep set up a program that was essentially a pyramid scheme, and that he took substantial payouts from JOD, even after the company began to fail, there was an objective substantial certainty that Plaintiffs would be harmed.

## VI. PRAYER

WHEREFORE, the Minns Firm Clients pray that after due proceedings be had, a judgment be entered in their favor and against Respondent Travis Seth Kniep as follows:

(a) declaring that Just One Dime and its subsidiary Just One Dime Coaching are alter egos of Seth Kniep;

(b) declaring that Seth Kniep's indebtedness to Plaintiffs, in an amount to be determined, is nondischargeable debt under 11 U.S.C. §523(a)(2)(A), (a)(4), and/or (a)(6); and

(c) granting Plaintiffs any and all additional relief to which they are entitled.

Respectfully submitted on this __10th__ day of June, 2024.

/s/ Rain Minns Udall
_____
Rain Levy Minns Udall
State Bar No. 24034581
Minns Law Firm, P.C.
d/b/a Rain Minns Law Firm
4412 Spicewood Springs Rd., Suite 500
Austin, Texas 78759-8583
Tel.: 512-372-3222
Fax: 512-861-2403
rain@rainminnslaw.com

ATTORNEY IN CHARGE FOR PLAINTIFFS
MINNS LAW FIRM CLIENTS GROUP